```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                        ATHENS DIVISION
```

DARRYL S. HAYNES,                  *

    Plaintiff,                 *

vs.                                *       CASE NO. 3:10-CV-11 (CDL)

JPMORGAN CHASE BANK, N.A.,         *
et al.,
                                   *
    Defendants.
                                   *

O R D E R

Plaintiff Darryl S. Haynes ("Haynes") borrowed more than $400,000 from United Bank in 2006. In conjunction with the loan, Haynes signed a Note and Security Deed. Defendant JPMorgan Chase Bank, N.A. ("Chase") asserts that the Note and Security Deed were later transferred to it. Chase contends that it has the right to foreclose on Haynes's property because Haynes defaulted on his obligations under the Note and Security Deed. Haynes filed the present action "for emergency injunctive and declaratory relief to stay foreclosure." *See generally* Compl., ECF No. 1-4. Haynes does not dispute that he owes more than $400,000 on his loan, and he does not dispute that he is in default under the Note and Security Deed. Haynes contends, however, that Chase has no rights in the Note and Security Deed and thus cannot foreclose on his property. Chase asserts that there is no genuine fact dispute that Chase *does* hold the Note

and Security Deed and is therefore entitled to foreclose on Haynes's property. For the reasons set forth below, the Court agrees with Chase, and Chase's Motion for Summary Judgment (ECF No. 53) is granted. Plaintiff's Motion to Strike (ECF No. 51) is denied. Plaintiff's Motion for Leave to File Sur-reply (ECF No. 59) is denied.

HAYNES'S PENDING MOTIONS

As a preliminary matter, the Court addresses Haynes's two pending motions: his Motion to Strike and his Motion for Leave to File Sur-reply. As discussed below, both motions are denied.

**I. Haynes's Motion to Strike**

Haynes filed a "Motion to Strike" Chase's Response and Objections to Plaintiff's Second Request for Production of Documents and Things (ECF No. 51). Haynes's chief complaint appears to be that Chase's responses were untimely; he contends that Chase's counsel "waited 33 days before filing [the] Responses and Objections." Pl.'s Mot. to Strike 1 ¶ 2, ECF No. 51. Chase's response was not untimely. Haynes served his request for production on Chase via U.S. Mail on December 6, 2010. Pl.'s 2d Req. for Produc. of Docs., ECF No. 41. Chase's response was due thirty-three days later. *See* Fed. R. Civ. P. 34(b)(2)(A) ("The party to whom the request is directed must respond in writing within 30 days after being served."); Fed. R. Civ. P. 6(d) (providing that when service is made by mail and

2

several other methods under Federal Rule of Civil Procedure 5(b)(2), "3 days are added after the period would otherwise expire under Rule 6(a)"). Because that date, January 8, 2011, fell on a Saturday, Chase's response was due on the next business day: Monday, January 10, 2011. *See* Fed. R. Civ. P. 6(a)(1)(C) ("[I]f the last day [of the period] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). Chase timely served its response on Haynes via U.S. Mail on January 7, 2011. Pl.'s Mot. to Strike Ex. A, Def.'s Resps. & Objections to Pl.'s 2d Req. for Produc. of Docs., ECF No. 51-1. For these reasons, Haynes's "Motion to Strike" is baseless, and the Court denies it.

**II. Haynes's Motion to File Sur-Reply Brief**

Haynes requests permission to file a sur-reply brief in opposition to summary judgment (ECF No. 59). His request is denied. Haynes has already briefed nearly all of the issues on which he seeks to include in a sur-reply, and the Court finds that additional briefing is not necessary on any of the issues Haynes raised in his motion for permission to file a sur-reply. Haynes also seeks to offer "additional proof" in opposition to summary judgment. Chase did not rely on any new evidence in its reply brief. Haynes did not explain why his "additional proof" could not have been offered when he filed his original

opposition to summary judgment, even though "now known issues" came to light during the discovery extension granted by the Court—before Haynes's summary judgment response deadline. Given that the "additional proof" relates to issues and evidence that were presented in Chase's original summary judgment motion and statement of undisputed material facts, the Court denies Plaintiff's Motion for Leave to File Sur-reply (ECF No. 59).

CHASE'S SUMMARY JUDGMENT MOTION

The Court now turns to Chase's summary judgment motion. For the reasons set forth below, the motion is granted.

## I. Summary Judgment Standard

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## II. Factual Background

Viewed in the light most favorable to Haynes, the record reveals the following:

In 2001, Haynes financed the purchase of a 51-acre tract of land located at 1380 Indian Creek Trail, Madison, Georgia 30650 ("Property") with a loan secured by a first priority Security Deed. Pl.'s Dep. 16:3-18:3, ECF No. 34; *accord* Pl.'s Am. Opp'n to Def.'s Statement of Undisputed Material Facts ¶ 1, ECF No. 57 [hereinafter Pl.'s SMF Opp'n] (acknowledging 2001 "land note"). Haynes also obtained a construction loan so he could construct a house on the property; that loan was secured by a second priority Security Deed. Pl.'s Dep. 18:4-19:6; *accord* Pl.'s SMF Opp'n ¶ 1 (acknowledging construction loan).

On March 17, 2006, pursuant to refinancing, Haynes consolidated the two loans. Haynes signed a loan Note in the principal amount of $417,000 ("Note"), with United Bank as the lender. Pl.'s Dep. Ex. 1, Note; *accord* Compl. ¶ 5 ("On or about March 17, 2006, Plaintiff executed a Note and Security Deed in favor of United Bank in connection with the refinance of the Property."); *see also* Pl.'s SMF Opp'n Attach. 13, Will Aff. ¶¶ 14, 18-19, ECF No. 56-13 (finding that signatures, including Plaintiff's, on Note and Security Deed were "original inked ('wet')" signatures). At the closing, Haynes received approximately $70,000 in cash, and the prior loans on the

Property were paid off.  Pl.'s Dep. 25:25-26:17.  Plaintiff contends that these "allegation[s] cannot be adequately ascertained," Pl.'s SMF Opp'n ¶ 2, but he points to no evidence that (1) he did not sign the Note on March 17, 2006, (2) he did not receive cash at closing, or (3) the original loans were not paid off.

Haynes also signed a Security Deed conveying the Property to United Bank as the grantee ("Security Deed").  Pl.'s Dep. 27:8-18; Pl.'s Dep. Ex. 2, Security Deed.  The Security Deed was recorded in the real estate records of Morgan County, Georgia. Pl.'s Dep. Ex. 2, Security Deed.

United Bank specially endorsed the Note to Washington Mutual Bank, FA.  Pl.'s Dep. Ex. 1, Note.  United Bank also assigned the Note and Security Deed to Washington Mutual Bank, FA.  Pl.'s Dep. Ex. 7, Assignment; *accord* Def.'s Statement of Undisputed Material Facts [hereinafter Def.'s SMF] Ex. C, Assignment, ECF No. 53-4.  Haynes contends that the assignment was invalid because "Washington Mutual Bank, FA" was a "nonexistent banking institution" at the time of the assignment in 2006 because Washington Mutual Bank, FA changed its name to Washington Mutual Bank in 2005.  The record establishes, however, that Washington Mutual Bank ("WaMu") continued to do business under the name Washington Mutual Bank, FA in a number of states, and WaMu informed Plaintiff of this fact in each of

6

his monthly mortgage statements. *E.g.,* Def.'s SMF Ex. 8 at HAYNES 0401-0402, Home Loan Statement, Apr. 2006. WaMu endorsed the Note in blank, Def.'s SMF Ex. A, Note, ECF No. 53-2, though Haynes appears to contend that the endorsement is invalid because the signature of WaMu's representative was affixed with a rubber stamp.

WaMu became the servicing agent for Haynes's loan. Haynes received notice that his loan had been assigned to WaMu, and he made his loan payments to WaMu. Pl.'s Dep. 39:2-21. Haynes now contends that he was misled about the assignment "due to material facts relating to this case that has [sic] surfaced during discovery phase after the deposition that was given by Plaintiff," Pl.'s SMF ¶ 7, but Haynes pointed to no specific evidence of how he was misled. Haynes also contends that he made mortgage payments to "Washington Mutual Bank, Inc." and that WaMu stole his money. Haynes's contentions appear to be based on his assertion that Washington Mutual Bank, FA, was a different entity than Washington Mutual Bank. As discussed above, however, Washington Mutual Bank did business as Washington Mutual Bank, FA, and was never a separate entity.

Haynes went into default on the Note in June 2008, and he owes more than $400,000 on the Note and Security Deed. Pl.'s Dep. 82:5-17; Notice of Removal Ex. A, JPMorgan Chase Bank, N.A. Decl. ¶ 7, ECF No. 1-1. Haynes now asserts that "no payments

7

were ever due to WaMu," Pl.'s SMF ¶ 10, but he points to no evidence that he did not default on his loan or that he does not owe more than $400,000 under the Note and Security Deed. He does contend that he did not owe any money *to WaMu* and that he does not owe any money *to Chase*.

On September 25, 2008, the Federal Deposit Insurance Corporation ("FDIC") declared WaMu insolvent and put it into receivership. Notice of Removal Ex. B, Schoppe Aff. ¶ 2, ECF No. 1-2. Also on September 25, 2008, Chase acquired from the FDIC receivership "all loans and all loan commitments" of WaMu. *Id.* ¶ 4; *accord* Def.'s SMF Ex. D, Purchase & Assumption Agreement, Sept. 25, 2008, ECF No. 53-5. Chase became the assignee of the Note and Security Deed, and Chase became the servicing agent for Haynes's loan. *E.g., id.* § 3.1. On one hand, Haynes summarily denies these facts but points to no evidence to rebut them; on the other hand, he appears to acknowledge that Chase received servicing rights. *See, e.g.*, Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 5, ECF No. 56-1 (stating that Chase "received servicing rights" to the Note in this case); *accord id.* at 12 (acknowledging that Chase "may stand in the shoes of WaMu" with regard to his Note but contending that Chase is "holding the same sack of crap that WaMu was holding").

Pursuant to the Purchase Agreement and a Power of Attorney granted to Chase by the FDIC, Chase signed an assignment of Haynes's Note and Security Deed from WaMu to Chase, and that assignment was recorded in the Morgan County Superior Court in the spring of 2010. *E.g.*, Def.'s SMF Attach. 9 Ex. G, Assignment and Limited Power of Attorney, ECF No. 53-16; Def.'s SMF Ex. D, Purchase & Assumption Agreement § 9.2, Sept. 25, 2008, ECF No. 53-5. Haynes contends that the assignment is invalid.

Chase holds physical possession of the original Note and Security Deed. *E.g.*, Def.'s SMF Attach. 7, Gill Decl. ¶¶ 6-9, ECF No. 53-7 (explaining chain of custody of Note and Security Deed); Def.'s SMF Attach. 8, Herndon Decl. ¶¶ 6-9, ECF No. 53-8 (same);[1] *see also* Pl.'s SMF Opp'n Attach. 13, Will Aff. ¶¶ 14, 18-19, ECF No. 56-13 (finding that signatures, including Plaintiff's, on Note and Security Deed were "original inked ('wet')" signatures). Haynes denies that Chase holds physical possession of the Note and Security Deed but points to no evidence to rebut this fact.

Haynes learned in September 2008 that WaMu had gone into receivership and that Chase was taking over its assets. Pl.'s

---

[1] Haynes objects to the declarations of Gill and Herndon because they are not sworn or notarized. The declarations were, however, subscribed as true under penalty of perjury, so the Court may consider them. *See* 28 U.S.C. § 1746 (stating that unsworn declaration under penalty of perjury has same force and effect as sworn affidavit).

Dep. 48:2-49:14. Haynes received statements from Chase notifying him that his loan had been acquired by Chase and that Chase would be servicing it. *Id.* at 123:22-124:4; *accord* Pl.'s Dep. Ex. 17, Home Loan Statement, Jan. 2009. Haynes summarily denies these facts but points to no evidence to rebut them.[2]

Haynes filed a Chapter 7 bankruptcy proceeding in September 2008. He did list "Washington Mutual Bank" and "Washington Mutual Mortgage" as creditors. Pl.'s Dep. Ex. 5, Letter from J. Pelham to D. Haynes, July 14, 2010, at HAYNES 0392. The bankruptcy was discharged on December 31, 2008. *Id.* at HAYNES 0390. After the bankruptcy, Haynes made several payments on his mortgage so that he could avoid foreclosure. Pl.'s Dep. 62:23-63:10. His payments became less regular and more sporadic; he continued to try and make payments until October 2009. *Id.* at 63:25-65:3, 124:24-125:22. Haynes stopped making mortgage payments after his October 2009 payment. *Id.* at 125:7-12.

---

[2] Haynes did file his own affidavit, to which Chase objects, stating: "I do not now have, or at any time had, a relationship with the named Defendant and thereby deny all of Defendants allegations of indebtedness." Pl.'s SMF Opp'n Attach. 14, Pl.'s Aff. ¶ 4, ECF No. 56-14. Haynes contends that the conflicts between his deposition and his affidavit exist because Chase committed "fraud." Based on the Court's review of Haynes's briefs and other papers, it appears that the alleged fraud is that (1) United Bank transferred Haynes's Note and Security Deed to a "nonexistent bank," and (2) the transfer/assignment of the Note and Security Deed to Chase was fraudulent and invalid because someone other than Chase owns his loan. As discussed in this Order, Haynes pointed to no competent evidence of either assertion.

10

Haynes now summarily denies these facts but points to no evidence to rebut them.

Chase referred Haynes's loan for foreclosure, and Haynes received letters from Chase's attorneys notifying Haynes that his loan had been referred for foreclosure and that a foreclosure sale had been scheduled. Pl.'s Dep. Ex. 9, Letter from A. DeMarlo to D. Haynes, Dec. 2, 2009 (notifying Haynes of foreclosure sale scheduled for January 5, 2010); Pl.'s Dep. Ex. 12, Letter from A. DeMarlo to D. Haynes, Dec. 31, 2009 (notifying Haynes of foreclosure sale scheduled for February 2, 2010). Haynes contends that the foreclosure notices were improper because they listed Washington Mutual Bank as the servicer even though WaMu had ceased operations by that point. Haynes also contends that the foreclosure notices were improper because they listed Chase as the creditor; Haynes asserts that the Federal Home Loan Mortgage Corporation ("Freddie Mac") actually owns his loan, but he points to no competent evidence in support of that assertion.

Haynes filed this action on January 4, 2010, seeking a stay of the foreclosure. No foreclosure has taken place, and Haynes continues to occupy the Property. Haynes pointed to no evidence that anyone other than Chase is attempting to foreclose on or assert any claim to the Property.

**III. Discussion**

Haynes does not dispute that he signed the Note and Security Deed. He does not dispute that he owes more than $400,000 on his loan. He does not dispute that he has not made a mortgage payment since October 2009 and is therefore in default under the Note and Security Deed. Haynes's own expert concluded that the Note and Security Deed in Chase's possession each contain Plaintiff's "original inked ('wet')" signature. Pl.'s SMF Opp'n Attach. 13, Will Aff. ¶¶ 14, 18-19, ECF No. 56-13. The only remaining question is whether Chase has any rights in the Note and Security Deed such that it may foreclose on the Property.[3]

Chase argues that it has the right to foreclose on the Property for four reasons: (1) Chase is the assignee of the Security Deed and Note under the FDIC Purchase Agreement, (2) Chase is the assignee of the Security Deed and Note by virtue of the assignment from WaMu to Chase, (3) Chase is the holder of

---

[3] Haynes contends that Chase is "barred from a Summary Judgment on all counts of Defendants complaint and is forever barred from foreclosing on" the Property due to "unclean hands, fraud upon the court, fraud upon the Plaintiff and fraud in the factum & inducement, Assignment & Title Fraud/Slander of Title, Violations of the Georgia Residential Mortgage Act & Mortgage Fraud, Violation of Fair Debt Collection Act, Negligent Supervision, Tortious Interference with Contract & Business Relationships, Violation of Fiduciary Duty, Violation of Good Faith & Fair Dealing, Violation of Georgia's Racketeering Statutes (RICO), Unjust Enrichment, Breach of Contract, Violations of the Real Estate Settlement and Procedures Act (RESPA), Violations of the Federal Truth-In-Lending Act (TILA), Violation of Fair Credit Reporting Act, Fraudulent Misrepresentation and Usury." Pl.'s Resp. to Def.'s Mot. for Summ. J. 2, ECF No. 56. Haynes points to no evidence in support of these claims.

the original Note, and (4) Chase is the servicer of the loan with the right to take actions necessary to collect, enforce, and administer the obligations of the Security Deed. As discussed below, Chase presented evidence to demonstrate that it is the assignee of the Security Deed and Note. Haynes has not pointed the Court to evidence that creates a genuine fact dispute on these issues, so Chase is entitled to summary judgment.

Under Georgia law, a transferee or assignee of a security deed is authorized to exercise the power of sale contained in the security deed. O.C.G.A. § 23-2-114. A transfer of a deed to secure debt "may be endorsed upon the original deed or by a separate instrument identifying the transfer and shall be sufficient to transfer the property therein described and the indebtedness therein secured." O.C.G.A. § 44-14-64(b). Haynes contends that Chase was not a transferee or assignee of the Security Deed and Note because both the initial assignment from United Bank to WaMu and the subsequent transfer from WaMu to Chase were "fraudulent and illegal."

As discussed above, the undisputed record evidence shows that on March 17, 2006, United Bank assigned the Note and Security Deed to Washington Mutual Bank, FA. Pl.'s Dep. Ex. 7, Assignment; *accord* Def.'s SMF Ex. C, Assignment, ECF No. 53-4. Haynes argues that the assignment is invalid because "Washington

Mutual Bank, FA" was a "nonexistent banking institution" at the time of the assignment in 2006, since Washington Mutual Bank, FA changed its name to Washington Mutual Bank in 2005. However, "[t]he change of a corporation's name is not a change of the identity of a corporation and has no effect on the corporation's property, rights, or liabilities." *Alley v. Miramon*, 614 F.2d 1372, 1384 (5th Cir. 1980).[4] Moreover, Washington Mutual Bank, or WaMu, continued to do business under the name Washington Mutual Bank, FA in a number of states, and the bank informed Plaintiff of this fact in each of his monthly mortgage statements. *E.g.,* Def.'s SMF Ex. 8 at HAYNES 0401-0402, Home Loan Statement, Apr. 2006. The Court finds that the assignment was not invalid simply because it listed "Washington Mutual Bank, FA" as the assignee rather than "Washington Mutual Bank." Haynes points to no other alleged deficiencies in the assignment, and the Court concludes that the assignment from United Bank to WaMu was valid.[5]

The next question is whether the transfer from WaMu to Chase was valid. The Court concludes that it was. Chase

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[5] Haynes does speculate that the Note and Security Deed were transferred "to Freddie Mac to be placed in a Mortgage Backed Security (MBS) and bundled with thousands of other mortgage loan and sold on the New York Stock Exchange (NYSE)." Pl.'s Resp. to Def.'s Mot. for Summ. J. 2, ECF No. 56. He pointed to no competent evidence in support of this contention.

14

pointed the Court to evidence that it acquired "all loans and all loan commitments" of WaMu on September 25, 2008. Notice of Removal Ex. B, Schoppe Aff. ¶ 4, ECF No. 1-2; *accord* Def.'s SMF Ex. D, Purchase & Assumption Agreement, Sept. 25, 2008, ECF No. 53-5. By virtue of the Purchase and Assumption Agreement, Chase became the assignee of the Note and Security Deed, which had been assigned to WaMu *and* specially endorsed to WaMu. *E.g., id.* § 3.1; *accord* 12 U.S.C. § 1821(d)(2)(G)(i)(II) (stating that FDIC may, as conservator or receiver, "transfer any asset or liability of the institution in default . . . without any approval, assignment, or consent with respect to such transfer"). Haynes pointed the Court to no competent evidence to rebut these facts, and the Court concludes that the transfer from WaMu to Chase was valid.

In summary, this is not, as Haynes suggests, a case in which a bank sought to institute a foreclosure action even though the bank had no evidence that it had ever owned or been assigned the mortgage at issue. In contrast, the undisputed evidence establishes that Chase is the assignee of the Note and Security Deed. Accordingly, under Georgia law, Chase has a right to foreclose on the Property. The Court therefore grants Chase's summary judgment motion.

CONCLUSION

For the reasons set forth above, Chase's Motion for Summary Judgment (ECF No. 53) is granted, Plaintiff's Motion to Strike (ECF No. 51) is denied, and Plaintiff's Motion for Leave to File Sur-reply (ECF No. 59) is denied.

IT IS SO ORDERED, this ____ day of _____, 2011.

                                            S/Clay D. Land
                                                CLAY D. LAND
                                     UNITED STATES DISTRICT JUDGE